[Civ. No. 10501. First Appellate District, Division Two.—June 30, 1937.]

UNION OIL COMPANY OF CALIFORNIA (a California Corporation) et al., Respondents, v. MUTUAL OIL COMPANY (a California Corporation) et al., Appellants.

Wendell P. Hubbard and Hanna & Morton for Appellants.

Andrews, Blanche & Kline, Mortimer A. Kline, Paul M. Gregg and Douglas C. Gregg for Respondents.

SPENCE, Acting P. J.—This is an appeal by defendants Mutual Oil Company, Bysshe, Jr., and Barratt from the same judgment which was before this court on the appeal of certain other defendants in *Union Oil Co.* v. *Mutual Oil Co.*, 19 Cal. App. (2d) 409 [65 Pac. (2d) 896]. The appeal here is presented upon typewritten transcripts and not merely upon the judgment roll.

Only one point need be considered here as all of the contentions of appellant Mutual Oil Company and all but one of the contentions of appellants Bysshe, Jr., and Barratt were considered upon the other appeal. (*Union Oil Co.* v. *Mutual Oil Co., supra.*) As to these last-named appellants, it is stated in the reply brief that "the whole question is whether there is any evidence . . . to support the finding that they knowingly caused the trespass to be made" or, as otherwise stated in said reply brief, whether there is any evidence to support the findings that said appellants "knowingly participated in the intentional drilling of the trespass well under plaintiff's property and stealing the oil therefrom".· Assuming that said appellants have correctly stated the question to be considered here, we are nevertheless of the opinion that said question must be decided against said appellants as the evidence appears to be sufficient.

It may be noted at the outset that appellants do not claim that the evidence was insufficient to sustain the findings to the effect that the Carpenter No. 1 well was intentionally and deliberately diverted and drilled so as to slant under and to trespass upon the Reyes lease (the lease held by respondents) and that oil and gas were intentionally and deliberately produced from within the boundaries of said Reyes lease by means of said Carpenter No. 1 well. Nor do appellants challenge the finding that 2,260 feet of said well trespassed upon the Reyes lease and extended within the limits thereof for a horizontal distance of more than 1,000 feet. The attack here is directed solely to the findings to the effect that said appellants knowingly participated in said trespass and the conversion of said oil and gas.

Turning to the evidence upon which the trial court so found, it appears that appellants Bysshe, Jr., and Barratt were the organizers of said Mutual Oil Company and owned two of the three outstanding shares thereof; that they were at all times officers and directors of said corporation and as

such, were in complete charge of the corporation's affairs, both financial and operative; that said corporation was organized by them for the purpose of acquiring the so-called Carpenter lease and that said lease was the sole asset and source of income of the corporation; that both of said appellants had had previous experience in oil field operations in other parts of California; that they knew of the great productivity of the Reyes lease which adjoined the Carpenter lease; that one of the experts consulted by them regarding the Carpenter lease before starting their operations had not been particularly optimistic, stating that in his opinion "they might get a small well" and further advising "that they might get in a jam if they drilled a crooked hole"; that said appellants employed a drilling superintendent and a petroleum engineer to assist in their operations, the latter being a former employee of respondent Union Oil Company who had knowledge of respondents' operations on the Reyes lease; that said employees were at all times under the direction of appellants; that appellants arranged for the rig and derrick and all other equipment to be used in drilling said Carpenter No. 1 well and personally selected the surface location of said well near the boundary line of said Reyes lease; that during the course of the drilling, they visited the property at least several times a week and discussed the drilling operations with the superintendent and the engineer; that they knew that whipstocks and knuckle joints were used extensively in the drilling operations and that they knew that these devices are used in drilling a well for the purpose of controlling its direction; that they arranged for so-called single shots to be taken and examined the resulting single shot buttons; that it is generally known that single shots are taken and that the showings thereof are platted for the purpose of determining the distance and direction of the deviation of a well from the perpendicular; that 43 single shot surveys were made of said well and the results of said showings were platted; that about January 22, 1934, one of said appellants instructed the drilling superintendent not to enter anything in the tour reports (the log or record of operations) regarding the setting of whipstocks or knuckle points in the well and to omit all reference by name to single shots; that prior to that time such entries had been made, but after that time no such entries were made; that shortly after that date, the course

of the Carpenter No. 1 well traversed the boundary line dividing the Carpenter lease and the Reyes lease.

The evidence further showed that in June, 1934, and shortly after said well had been put on production, the corporation received a letter from respondent Union Oil Company regarding the course of said well; that said appellants had a discussion regarding said letter, but in said discussion, neither of said appellants discussed the location of the bottom of the well; that this action was brought in August, 1934, and that said appellants were then fully advised of the claims of respondents; that they nevertheless continued to operate said well thereafter and that they did not cease operating the well until after it had been surveyed under court order.

While said appellants denied that they knowingly participated in the trespass and conversion, their testimony was not believed by the trial court and we are of the opinion that the foregoing summary shows that there was ample evidence to sustain the challenged findings.

The judgment is affirmed.

Sturtevant, J., and Gray, J., *pro tem.*, concurred.